Filed 12/3/25  P. v. Vindiola CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEREMY MICHAEL VINDIOLA,<br><br>        Defendant and Appellant. | B337660<br><br>(Los Angeles County<br>Super. Ct. No. KA083672) |

APPEAL from orders of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Affirmed in part, vacated in part, and remanded.

Corey J. Robins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, and David A. Voet, Deputy Attorney General, for Plaintiff and Respondent.

In 2009, a jury convicted Jeremy Vindiola (defendant) of the first degree murder of Edward Galvan (Galvan). The trial court sentenced defendant to 77 years to life. More recently, defendant filed petitions for relief pursuant to Penal Code section 1172.6 (former section 1170.95), which concerns changes to California's murder statutes, and Penal Code section 1172.75, which invalidates one-year prior prison term enhancements and provides for resentencing.[1] The trial court found defendant was ineligible for section 1172.6 relief as a matter of law because his trial jury was not instructed on any theory that would have avoided the need to find malice in convicting him of murder. As to the request for section 1172.75 relief, the court struck two previously imposed one-year enhancements and resentenced him without any additional changes to his original sentence. In this consolidated appeal, we consider (1) whether denial of defendant's section 1172.6 petition was error because it is possible the jury could have imputed malice to him in the absence of instructions on felony murder or the natural and probable consequences doctrine, and (2) whether, as defendant contends for the first time, the trial court should have imposed a lower sentence at resentencing in light of his drug use at the time of the crime.

## I. BACKGROUND

### A. *The Offense Conduct*

On June 16, 2008, Galvan and Michael "Minor" Trejo (Trejo), a local drug dealer who used his Covina apartment as his

---

[1] Undesignated statutory references that follow are to the Penal Code.

2

base of operations, attacked Christopher "Spooks" Saucedo (Saucedo) because they did not want him near Trejo's apartment.

The following evening, at approximately 11:15 p.m., Trejo again saw Saucedo in the area of his (Trejo's) apartment. Trejo also observed defendant's automobile, a black Toyota Camry, and Wilson Omar Alfaro (Alfaro)'s vehicle, a white Nissan SUV, parked one behind the other. Moments earlier, Alfaro had come to Trejo's apartment to complain about the poor quality of the methamphetamine he recently purchased from Trejo. Although he saw defendant's vehicle, Trejo did not see defendant.

After spotting Saucedo, Trejo asked his brother to contact Galvan, who arrived shortly thereafter. Because both Trejo and Galvan considered Saucedo an "enemy," they went outside and confronted him. As they moved across the street, Trejo thought Saucedo was "acting funny"—he was just holding a cell phone but not looking at or talking on it and the screen was not illuminated.

Because both Galvan and Trejo thought Saucedo might be "strapped" and have "something on him," i.e., a firearm, the two men closed to within 10 feet and then "stood [their] distance." The two men asked Saucedo if he was armed and he indicated he was not. The two men then began "yelling" and "talking shit" to Saucedo, who did not respond.

As Galvan and Trejo were yelling at Saucedo, Alfaro approached Galvan, said "I'll smoke your bitch ass," and opened fire. At the same time, defendant came out from crouching behind his car, and he too opened fire. Galvan was shot twice, once in the head, which was fatal, and once in his right buttock, which was not. Trejo fled and was not injured. Alfaro left the scene in his vehicle, and defendant and Saucedo left in defendant's automobile.

3

*B.*    *Defendant's Trial, Sentencing, and Direct Appeal*

In a single-count amended information, the Los Angeles County District Attorney charged defendant and Alfaro with Galvan's murder (§ 187, subd. (a)).  The amended information alleged defendant and Alfaro each personally and intentionally used and discharged a handgun which caused great bodily injury and death (§ 12022.53, subds. (b)-(d)) and that defendant had suffered two prior prison terms (§ 667.5, subd. (b)).

Defendant and Alfaro were tried jointly.  In addition to law enforcement officers and the medical examiner who performed an autopsy on Galvan's body, the prosecution presented testimony from a number of residents of and visitors to the neighborhood on the night of the murder who witnessed by sight and/or sound Galvan's murder and defendant and Alfaro's escape thereafter.

After the presentation of evidence, the trial court instructed the jury on first and second degree murder.  The only theory of murder presented in the instructions was malice murder; there were no instructions on felony murder or murder pursuant to the natural and probable consequences doctrine.[2]

The court also instructed the jury on accomplice liability, including aiding and abetting principles.  The court gave CALJIC No. 3.00, which provided:  "Persons who are involved in committing or attempting to commit crime are referred to as

---

[2]    The prosecution maintained the shooting was a pre-planned first degree murder in which defendant and Alfaro used Saucedo to lure Galvan into a vulnerable position.  The defense at trial was self-defense and/or defense of Saucedo.  The court accordingly gave self-defense and voluntary manslaughter instructions.

4

principals in the crime. Each principal, regardless of the extent or manner of participation, is equally guilty. Principals include[ ]: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime; or [¶] 2. Those who aid and abet the commission or attempted commission of the crime." The court also gave CALJIC No. 3.14, which provided: "Merely assenting to, aiding, or assisting in the commission of a crime without knowledge of the unlawful purpose of the perpetrator and without the intent or purpose of committing, encouraging, or facilitating the commission of the crime is not criminal. Thus, a person who assents to, or aids, or assists in, the commission of the crime without that knowledge and without the intent or purpose is not an accomplice to the commission of the crime." The court additionally gave CALJIC No. 3.31, explaining that "there must exist a union or joint operation of act or conduct and a certain specific intent in the mind of the perpetrator. Unless this specific intent exists the crime or allegation to which it relates is not committed or is not true."

Deliberating less than a day, the jury found defendant and Alfaro guilty of first degree murder and found true all of the firearm allegations. The trial court sentenced defendant to 77 years to life (25 years to life for the murder, which was doubled for a prior "strike" conviction, plus 25 years to life for the section 12022.53, subd. (d) firearm enhancement, plus two one-year prior prison term enhancements pursuant to section 667, subdivision (b)).[3]

---

[3] The trial court sentenced Alfaro to 50 years to life.

On direct appeal, a different panel of this court affirmed the judgment. (*People v. Vindiola* (Apr. 25, 2011, B220180) [nonpub. opn.].) Among other things, defendant had challenged the aiding and abetting instruction and its equally guilty language as inconsistent with authority (see, e.g., *People v. McCoy* (2001) 25 Cal.4th 1111) holding an aider and abettor must share the murderous intent of the perpetrator. This court held the argument was both forfeited and nonprejudicial in any event. Specifically, this court held, using the *Chapman v. California* (1967) 386 U.S. 18 standard, that "the evidence adduced at trial in support of a first degree murder conviction against each defendant was strong and showed that defendants and [Saucedo] lured Galvan and Trejo outside in order to kill them. There is no indication or suggestion that when defendants fired at Galvan and Trejo they harbored different mental states. Accordingly, even if the trial court had not instructed the jury with CALJIC No. 3.00, it is beyond a reasonable doubt that the jury would have convicted defendants of first degree murder."

### C.   *Defendant's Requests for Resentencing Relief*
#### 1.   *Defendant's section 1172.6 petition*

In 2022, defendant filed a form section 1172.6 resentencing petition alleging he could not be convicted of murder because of intervening changes to sections 188 and 189, effective January 1, 2019.[4] The People opposed the petition and argued defendant

---

[4]   In his section 1172.6 petition, defendant requested that the trial court appoint counsel to represent him. The court complied with the request and appointed defendant's trial counsel to

6

was ineligible for relief as a matter of law because he was convicted not pursuant to a theory of felony murder or as an aider and abettor under the natural and probable consequences doctrine, but as an "actual perpetrator."

In his reply, defendant maintained he was eligible for resentencing relief "despite the fact there were no jury instructions allowing the jury to impute malice to [defendant] and the jury found [defendant] was an actual shooter in the incident." Although the jury was not instructed on felony murder or the natural and probable consequences doctrine, defendant argued the instructions that were given nonetheless permitted the imputation of malice and urged the trial court to hold an evidentiary hearing. Defendant did not identify which instructions purportedly permitted the imputation of malice and cited to only one case in support of his jury instructions argument, *People v. Langi* (2022) 73 Cal.App.5th 972.

At an April 2024 hearing on defendant's section 1172.6 petition, the defense submitted on the filed briefs. The trial court interjected with a question, asking the defense to identify the jury instruction that allowed the jury to impute malice. The defense conceded there was no such instruction but maintained the request for relief should still be granted. The court followed up, highlighting the *Langi* case the defense cited and explaining that its reading of the jury instructions in this case, unlike *Langi*, identified no instruction that allowed the jury to impute malice. The defense agreed. The trial court then found defendant failed to make a prima facie showing and denied the section 1172.6

represent him in both the section 1172.6 and 1172.75 proceedings.

7

resentencing petition without ordering an evidentiary hearing. The court explained: "There was no natural and probable consequences instruction given, no aiding and abetting instructions given, no jury instruction that I could find that allowed the jury to impute malice. [¶] In addition, it was found to be true that [defendant] personally discharged the firearm."

### 2. *Defendant's section 1172.75 motion*

In 2023, the Department of Corrections and Rehabilitation notified the trial court that defendant was potentially eligible for re-sentencing pursuant to Senate Bill No. 483 (Senate Bill 483 (2021-2022 Reg. Sess.)), which, among other things, retroactively invalidated certain former section 667.5, subdivision (b) enhancements.[5] (§ 1172.75, subd. (a).)

In a brief filed after he was appointed counsel, defendant urged the trial court to vacate the two one-year section 667.5 prior prison term enhancements and strike the 25-year enhancement for the section 12022.53, subdivision (d) firearm finding. Defendant argued this relief was justified because of his history of drug abuse, his relatively young age at the time of

---

[5]     Senate Bill 483 added what is now section 1172.75 to the Penal Code. (Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.) Section 1172.75 requires CDCR to inform trial courts of inmates serving sentences with one or more now-invalid prior prison term enhancements. (§ 1172.75, subd. (b).) Once a court receives this information and confirms that the inmate's sentence includes an invalid enhancement, it "shall recall [their] sentence and resentence" them. (*Id.*, subd. (c).)

8

Galvan's murder,[6] and his efforts at rehabilitation while in prison, which included earning an AA degree.

In its opposition, the People conceded the two prior prison enhancements should be stricken but opposed any further reduction in defendant's sentence because his criminal history and conduct while incarcerated for Galvan's murder showed he remained a threat to public safety. The People related that in 2012, defendant, with another inmate, physically attacked a third inmate, striking the victim in the head and torso and refusing to stop when ordered to do so, and that in 2014 defendant had been found guilty by prison officials of conspiracy to commit murder. The People related further that an investigation by prison officials revealed defendant was a member of EME, a Mexican prison gang, and that defendant held a position of authority within EME. In addition, in 2022, defendant was found in possession of manufactured alcohol.

On May 29, 2024, the trial court held a hearing on the section 1172.75 notification. Defendant addressed the court, stating that he was "no longer[ ] involved in [his] old lifestyle" and that he had changed his life in order to be a role model for his sons. The court observed that while obtaining an AA degree was "admirable," defendant had not enrolled in any substance abuse rehabilitation programs while in prison and had not renounced his gang association or participated in any gang rehabilitation classes. In light of defendant's participation in prison violence, the lack of any evidence showing a renunciation of his gang involvement, and the absence of any evidence he was

---

[6]    At the time of Galvan's death, defendant was 23 years old.

under the influence of drugs at the time of Galvan's murder, the court found it was not in the interest of justice to reduce defendant's sentence beyond vacating the one-year prior prison term enhancements. In holding the full resentencing section 1172.75, subdivision (c) requires when legally invalid enhancements have been imposed, the court recalled defendant's original sentence, vacated the two one-year prison term enhancements, and resentenced defendant to 75 years to life in prison.[7]

## II. DISCUSSION

Defendant contends the trial court erred in denying his section 1172.6 petition because certain ambiguities in the jury instructions "could have" allowed the jury to convict him of first degree murder under a theory by which malice was imputed to him based solely on his participation in the crime. Had the trial court given defendant an opportunity to present any new evidence beyond the record of the original trial at a section 1172.6, subdivision (d)(3) hearing, the argument would be foreclosed by this court's prior finding on direct appeal that the trial evidence demonstrated beyond a reasonable doubt that defendant and Alfaro shared the same mental state required for conviction of first degree murder. (*People v. Curiel* (2023) 15 Cal.5th 433, 451-452 [discussing issue preclusion].) But the trial court denied the petition on the theory that defendant was

---

[7] Defendant noticed an appeal from the trial court's ruling on his section 1172.75 motion. We granted defendant's motion to consolidate both of his appeals for briefing, argument, and decision.

10

ineligible as a matter of law and did not ask defendant if he had any new evidence he could present. We therefore conclude a remand is required to clarify the state of the record. If the trial court confirms, at a hearing following issuance of an order to show cause or by way of seeking an advance proffer from defendant, that there is no new evidence materially bearing on the question of defendant's mental state at the time of Galvan's murder, denial of the petition will again be warranted. If the contrary is true, the trial court must re-adjudicate the petition in accordance with section 1172.6, subdivision (d)(3).

Defendant additionally contends the trial court abused its discretion under section 1172.75 when it declined to do more than vacate two one-year prior prison term enhancements because the court "failed to note that the shooting occurred in the context of a drug rip-off that occurred earlier that day." According to defendant, the drug rip-off evidence "fairly implies that the shooting was related to [defendant's] drug abuse since he was helping Alfaro try to obtain actual drugs rather than the bunk drugs Trejo originally sold Alfaro." Defendant, however, never raised this argument in the trial court. We accordingly reject it as forfeited.

> ### A. A Remand Is Required to Determine Defendant's Eligibility for Section 1172.6 Relief

Section 1172.6, in relevant part, provides that "person[s] convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" may file a petition to have that conviction vacated under certain circumstances. (§ 1172.6, subd.

11

(a); *People v. Antonelli* (2025) 17 Cal.5th 719, 724; see also *id.* at 731 [clarifying that the language in § 1172.6, subdivision (a)(3) referencing changes to murder and attempted murder law made effective January 1, 2019, "'does not require a showing that a claim [for] relief . . . arises from *no other* cause'"; it means "'only that the 2019 changes supply a basis for the claim and so are a cause'"].)  If the petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief based on the requirements of subdivision (a), the sentencing court, after briefing by the parties, must hold a hearing to determine whether the petitioner has made a prima facie showing of entitlement to relief.  (§ 1172.6, subd. (c); *Curiel, supra,* 15 Cal.5th at 450.)  Importantly, at such a hearing, a defendant and the People have the right to "offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)

In deciding whether a petitioner has made a prima facie showing for relief, the sentencing court "looks beyond the face of the petition" to the record of conviction, which "'necessarily inform[s] the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.'" (*People v. Patton* (2025) 17 Cal.5th 549, 563, quoting *People v. Lewis* (2021) 11 Cal.5th 952, 971.)  As part of the record of conviction, jury instructions "will generally inform the prima facie inquiry under section 1172.6." (*Antonelli, supra,* 17 Cal.5th at 723; see also *id.* at 731 ["In assessing section 1172.6 petitions from individuals convicted following jury trials, the jury instructions will be critical"].)  Only where "the petition and record in the case establish conclusively that the defendant is ineligible for relief," may the court deny the petition.  (*People v.*

*Strong* (2022) 13 Cal.5th 698, 708; accord, *Curiel, supra,* 15 Cal.5th at 450.)

We review de novo the trial court's denial of a petition for resentencing at the prima facie review stage, including its determination that the record of conviction establishes as a matter of law that the petitioner is not entitled to resentencing. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170, disapproved on another ground in *Patton, supra,* 17 Cal.5th at 569 & fn. 12.)

Defendant contends the "equally guilty" language of CALJIC No. 3.00, when read with other instructions, such as CALJIC 17.31, could have allowed the jury to find him guilty of first degree murder "based on his intent to aid and abet a lesser crime than first[ ]degree murder, thus imputing Alfaro's mens rea to [defendant]." In so arguing, defendant relies heavily on *Langi, supra,* 73 Cal.App.5th 972.

In *Langi*, the defendant was part of a group that beat and robbed the victim, who ultimately fell, hit his head, and died. (*Langi, supra,* 73 Cal.App.5th at 975.) Langi, who was tried separately, argued at trial that he did not throw the fatal punch, and his jury was instructed on aiding and abetting and second degree murder. (*Id.* at 977.) The jury convicted him of robbery, battery, and second degree murder, and his subsequent section 1172.6 petition was summarily denied. (*Ibid.*)

The reviewing court assumed the jury had convicted Langi as an aider and abettor. (*Langi, supra,* 73 Cal.App.5th at 980.) It then found CALJIC Nos. 3.01 (aiding and abetting) and 8.31 (second degree murder) were ambiguous and permitted the jury to find Langi guilty on a theory under which malice was imputed to him based solely on his participation in the crime. (*Langi, supra,* at 981-982.) The court observed that while the aiding and

13

abetting instruction stated a person aided and abetted a crime if the person acted with knowledge of the perpetrator's unlawful purpose and with the intent to commit or encourage the crime, "the second-degree-murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death." (*Id*. at 982.) The perpetrator's unlawful purpose could instead have been "only to strike or to injure, or conceivably only to embarrass, the victim." (*Ibid*.) "Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill." (*Ibid*.) Because the aiding and abetting instruction did not require the jury to find the defendant personally acted with malice, the appellate court concluded the jury could have convicted Langi as an aider and abettor merely because he intended to aid or assist in the beating of the victim. (*Id*. at 983.)

Defendant's argument that the aiding and abetting instructions in this case include an ambiguity (or flaw) that is sufficiently akin to the problem in *Langi* focuses on the absence of a requirement that the jury find defendant personally harbored malice. Insofar as the Attorney General emphasizes defense counsel's concessions at the section 1172.6 hearing and argues the point is forfeited, the argument has some force. But we hold the point was minimally preserved by the citation to *Langi* in the defense written submissions.

On the merits, it is impossible on the present record to accept defendant's contention that the jury could have convicted him by imputing Alfaro's malice to him (assuming Alfaro was the actual killer) without contradicting this court's prior holding that any instructional error was harmless because the evidence

14

demonstrated beyond a reasonable doubt that defendant and Alfaro shared the same mental state—i.e., a premeditated intent to kill. Ordinarily, this would preclude defendant's argument. (See, e.g., *Curiel, supra*, 15 Cal.5th at 451-452; see also *People v. Barragan* (2004) 32 Cal.4th 236, 246 [discussing the law of the case doctrine].) The twist here, however, is that section 1172.6 permits a defendant to introduce new evidence at an evidentiary hearing and allows a court to deny a section 1172.6 petition before such a hearing only if the defendant is ineligible for relief as a matter of law. (See, e.g., *Lewis, supra,* 11 Cal.5th at 971-972.) Because—with the right new evidence—it is theoretically possible that a court could find defendant did not share the mental state required to be convicted of malice murder, we will vacate the trial court's order and remand with directions to afford defendant an opportunity to come forward with any new evidence that could materially impact the conclusion about his mental state that this court previously drew. This opportunity may come either at a hearing following issuance of an order to show cause or in response to a request from the court for a proffer of any such evidence that would be presented should an order to show cause issue.

> **B. *Defendant Forfeited His Section 1172.75 Claim by Failing to Raise It in the Trial Court***

"'In general, the forfeiture rule applies in the context of sentencing as in other areas of criminal law.' [Citation.]" (*People v. Trujillo* (2015) 60 Cal.4th 850, 856.) "[In] *People v. Scott* (1994) 9 Cal.4th 331 [ ], [our Supreme Court held that] a defendant forfeits on appeal any 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices'

15

in the absence of objection below. [Citations.]" (*People v. Wall* (2017) 3 Cal.5th 1048, 1075.) That is the case here. Defendant did not raise the "drug rip-off" evidence in his section 1172.75 briefing in the trial court or in his statement to the court at the hearing. At the hearing, his attorney did not raise the drug rip-off evidence in his argument and did not object to the court's omission of such evidence when it explained the reasons for its ruling. The absence of any objection or argument on the specific ground now advanced on appeal results in forfeiture. (See, e.g., *People v. Pearson* (2013) 56 Cal.4th 393, 416 [a "defendant's failure to make a timely and specific objection on the ground he now raises forfeits the claim on appeal"].)

Defendant alternatively suggests his attorney was constitutionally ineffective by failing to raise the forfeited argument. To establish ineffective assistance of counsel, "a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant." (*People v. Samayoa* (1997) 15 Cal.4th 795, 845; see also *Strickland v. Washington* (1984) 466 U.S. 668, 688.)

Defendant makes no serious attempt at either of these demonstrations. Instead, he raises his ineffective assistance claim in a subheading but offers no supporting argument in the text that follows. An argument like defendant's that "does not even attempt to explain how counsel's failure to object fell below an objective standard of reasonableness or how the failure to object resulted in prejudice" does not suffice, and "[w]e will not

16

address a claim that defendant has failed to develop." (*People v. Mitchell* (2008) 164 Cal.App.4th 442, 467; see also *People v. Bonin* (1989) 47 Cal.3d 808, 857, fn. 6.)

DISPOSITION

The trial court's order denying defendant's section 1172.6 petition is vacated and the cause is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

I concur:

KIM (D.), J.

17

*People v. Vindiola*, B337660 c/w B338387


HOFFSTADT, P. J., Concurring in part and dissenting in part.

I agree with the majority's disposition of the appeal regarding defendant's section 1172.75 petition. However, I disagree with its disposition of the appeal of defendant's section 1172.6 petition. In my view, we need not reach the res judicata effect of our prior decision on appeal because the jury instructions themselves foreclose as a matter of law any possibility that the jury found defendant guilty of first degree murder without also finding that he personally harbored malice aforethought. The jury in this case was not explicitly instructed on any theory that would allow it to impute malice to defendant, such as the theories of felony-murder or natural and probable consequences liability. The jury *was* instructed that direct aiders and abettors are "equally" guilty as perpetrators, which *People v. Langi* (2022) 73 Cal.App.5th 972, 983 deemed insufficient to foreclose the possibility that the jury might impute the perpetrator's malice to the aider and abettor. But the jury in this case was also instructed that a person could not be a direct aider and abettor unless they acted with "the intent or purpose of committing, encouraging or facilitating the commission of the crime," and a person could not be convicted of first degree murder unless they acted with a "clear, deliberate intent . . . to kill." To me, these additional instructions ensured that the jury's first degree murder verdict necessarily rested on its finding that defendant personally harbored malice. I would therefore affirm the

summary denial of section 1172.6 relief, rather than remand for further proceedings.


_____, P. J.
HOFFSTADT